**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SIPCO LLC<br>Plaintiff,<br>v.<br>PEPPERL+FUCHS SE,<br>Defendant. | Case No. 2:26-cv-00932<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff SIPCO LLC ("SIPCO" or "Plaintiff") files this Complaint for Patent Infringement against Pepperl+Fuchs SE ("Pepperl+Fuchs" or "Defendant"), alleging as follows:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

2. This is a patent infringement action against Defendant for infringement of the following U.S. Patents (the "Asserted Patents"):

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 9,439,126 | Wireless Network Protocol System and Methods | USPTO.GOV https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9439126 |
| 2. | 9,860,820 | Wireless Network Protocol Systems and Methods | USPTO.GOV https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9860820 |
| 3. | 10,356,687 | Wireless Network Protocol Systems and Methods | USPTO.GOV https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/10356687 |
| 4. | 11,039,371 | Wireless Network Protocol Systems and Methods | USPTO.GOV https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/11039371 |

**PARTIES**

3. SIPCO is a limited liability company organized and existing under the laws of the State of Georgia and maintains a principal place of business at 10306 Eaton Place, Suite 300, Fairfax, Virginia 22030.

4. SIPCO is a research, development, and technology licensing company originally founded by Thomas David Petite and two business partners. Mr. Petite is the inventor of each of the Asserted Patents and a well-known and respected innovator in the field of wireless mesh technology. The U.S. Patent and Trademark Office (the "Patent Office") has even recognized Mr. Petite as an influential inventor in the field of "wireless ad hoc network or Wireless Mesh Technology" by including him in its "Inventor Collectible Trading Card Series." Patent Office, Collectible Cards, https://www.uspto.gov/kids/inventors-change-world#modalCard81716 (last visited Oct. 15, 2026). Other notable inventors in this series include Thomas Edison, Abraham Lincoln, Nikola Tesla, and Steve Wozniak. *Id.* In 2012, then-Under Secretary of Commerce for IP and Director of the Patent Office, David Kappos, lauded Mr. Petite as "a highly recognized inventor in the worldwide energy and communications community," and as possessing "unique genius." David Kappos, *Expanding Outreach to the Native American Community*, Remarks at the Native American Intellectual Property Enterprise Council Reception 2 (Jan. 30, 2012) (SIPCO, LLC Ex. 2020, IPR2016-00984).

5. On information and belief, Defendant Pepperl+Fuchs is a German company with its principal place of business at Lilienthalstraße 200, 68307 Mannheim, Germany. On information and belief, Defendant is the successor to Pepperl+Fuchs GmbH, a German company formerly located at the same address.

6. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in

the United States, including in the Eastern District of Texas, and otherwise directs infringing activities to this District in connection with its products and services.

**JURISDICTION AND VENUE**

7. This is an action for infringement of United States patents arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. This Court has personal jurisdiction over Defendant, in part because Defendant does continuous and systematic business in this District, including by providing infringing products and services to the residents of the Eastern District of Texas that Defendant knew would be used within this District, and by soliciting business from the residents of the Eastern District of Texas. For example, Defendant is subject to personal jurisdiction in this Court because, *inter alia*, Defendant has distribution partners in this District and directly and through agents, subsidiaries, and affiliates regularly does, solicits, and transacts business in the Eastern District of Texas.

9. In particular, Defendant, itself and through its controlled subsidiaries and affiliates, has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 in Texas, and has made, used, marketed, distributed, offered for sale, sold, and/or imported infringing products in the State of Texas, and engaged in infringing conduct within and directed at or from this District. For example, Defendant, itself and through its controlled subsidiaries and affiliates, has purposefully and voluntarily placed the Accused Products (as defined further below) into the stream of commerce with the expectation that the Accused Products will be used in this District. The Accused Products have been and continue to be distributed to and used in this District. Defendant's acts cause and have caused injury to SIPCO, including within this District.

10. On information and belief, wholly owned subsidiaries and affiliates who regularly and continuously conduct business in this District at the direction and on behalf of Defendant include

at least Pepperl+Fuchs, Inc., an Ohio corporation registered to conduct business in Texas, Pepperl+Fuchs Manufacturing, Inc., a Delaware corporation registered to conduct business in Texas, and Pepperl+Fuchs Americas, Inc., a Delaware corporation registered to conduct business in Texas. On information and belief, Defendant controls the design, manufacture, marketing, and distribution of the Accused Products sold in the United States by and through these entities.

11. In the alternative, this Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2) because SIPCO's claims arise under federal law, Defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state, and Defendant has sufficient contacts with the United States as a whole—including by making, importing, offering for sale, and selling the Accused Products throughout the United States through its U.S. subsidiaries, distributors, and website—such that exercising jurisdiction is consistent with the United States Constitution and laws.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because Defendant is a foreign corporation not resident in the United States and may, therefore, be sued in any judicial district.

## THE PATENTS-IN-SUIT

13. Defendant previously licensed SIPCO's wireless mesh patent portfolio, including the family from which the Asserted Patents issued. Defendant has therefore had actual knowledge of the Asserted Patents since at least 2017.

14. U.S. Patent No. 9,439,126 (the "'126 patent"), entitled "Wireless Network Protocol System and Methods," was duly and legally issued by the Patent Office on September 6, 2016, to inventor Thomas David Petite, after examination of Application No. 11/814,632, which was filed as the national stage of PCT/US2006/002342 filed January 25, 2006.

15. U.S. Patent No. 9,860,820 (the "'820 patent"), entitled "Wireless Network Protocol

Systems and Methods," was duly and legally issued by the Patent Office on January 2, 2018, after examination of Application No. 15/257,641, filed September 6, 2016. The '820 patent is a continuation of Application No. 11/814,632, which issued as the '126 patent, and is subject to a terminal disclaimer.

16. U.S. Patent No. 10,356,687 (the "'687 patent"), entitled "Wireless Network Protocol Systems and Methods," was duly and legally issued by the Patent Office on July 16, 2019, after examination of Application No. 15/859,885, filed January 2, 2018. The '687 patent is a continuation of Application No. 15/257,641, which issued as the '820 patent.

17. U.S. Patent No. 11,039,371 (the "'371 patent"), entitled "Wireless Network Protocol Systems and Methods," was duly and legally issued by the Patent Office on June 15, 2021, after examination of Application No. 16/432,176, filed June 5, 2019. The '371 patent is a continuation of Application No. 15/859,885, which issued as the '687 patent, and is subject to a terminal disclaimer.

18. Each Asserted Patent claims priority, directly or through the continuation chain, to U.S. Provisional Application No. 60/646,689, filed January 25, 2005.

19. SIPCO owns the entire right, title, and interest to each of the Asserted Patents.

## THE ACCUSED PRODUCTS

20. Based upon public information, Defendant owns, operates, advertises, and/or controls the website https://www.pepperl-fuchs.com/en, through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.

21. Defendant makes, uses (including through testing), sells, offers for sale, imports, provides, supplies, or distributes WirelessHART-enabled products that support wireless communication according to IEC 62591, and instructs end users to use them (the "Accused

Products"). These include, but are not limited to: Bullet WirelessHART Adapter WHA-BLT-F9D0-N-A0-GP-1; Bullet WirelessHART Adapter WHA-BLT-F9D0-N-A0-Z0-Ex1; Bullet WirelessHART Adapter WHA-BLT-F9D0-N-A0-Z1-1; WirelessHART Gateway WHA-GW-F2D2-0-AS-Z2-ETH; WirelessHART Gateway WHA-GW-F2D2-0-AS-Z2-ETH.EIP; WirelessHART Temperature Converter WHA-UT-F7B1-0-PP-Z1-Ex2; WirelessHART Adapter WHA-ADP2-F8B2-0-P0-GP-1; WirelessHART Adapter WHA-ADP2-F8B2-0-A0-Z1-Ex1; WirelessHART Adapter WHA-ADP2-F8B2-0-P0-Z1-Ex1; WirelessHART Adapter WHA-ADP-F8B2--P-GP(-1); WirelessHART Adapter WHA-ADP-F8B2--P-Z1(-Ex1); and WirelessHART Adapter WHA-ADP-F8B2--A-Z1(-Ex1), along with other substantially similar products and services offered in the past, present, or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

22. Based upon public information and on information and belief, Defendant, directly and/or through its agents and intermediaries, operates, advertises, and/or controls specific locations and facilities throughout this District, through which it and its agents, customers, and employees use, advertise, provide, and/or educate third parties about the Accused Products.

23. The Accused Products implement the IEC 62591 (WirelessHART) mesh networking protocol, under which field devices and adapters route packets through neighboring devices to a gateway, maintain lists of neighbor devices, and track statistics regarding successful and failed transmissions to those neighbors that are used in selecting and adjusting communication paths.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,439,126

24. SIPCO repeats and re-alleges the allegations in the Paragraphs above as though fully

set forth in their entirety.

25. SIPCO is the assignee and lawful owner of the entire right, title, and interest in the ’126 patent, including the sole and exclusive right to bring this action, enforce the ’126 patent against infringers, and collect damages for all relevant times. SIPCO does not, however, seek damages in this action for any Accused Product made, sold, offered for sale, imported, or used by Defendant on or before March 1, 2022

26. On July 12, 2024, SIPCO, through counsel, wrote to Defendant identifying the ’126 patent and the Accused Products, noting that Defendant's prior license had lapsed, and inviting Defendant to negotiate a new license. On July 17, 2024, Defendant acknowledged the letter and stated it was evaluating the matter and would respond by August 16, 2024. It did not. On October 10, 2025, SIPCO wrote again seeking to engage on a renewed license.

27. The claims of the ’126 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the function and operation of wireless communication networks having a site controller and a plurality of remote devices, by enabling remote devices to independently determine communication paths, forward data packets from downstream devices, and maintain connection lists with success data scores used to select and, when necessary, reselect communication paths based on successful and unsuccessful transmissions.

28. The written description of the ’126 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

29. Defendant has directly infringed and continues to directly infringe one or more claims of the ’126 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

30. Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the ’126 patent.

31. As just one example, the Accused Products practice each limitation of claim 1, including: a wireless communication network having a site controller wirelessly coupled to a plurality of wireless remote devices, a system comprising: a first remote device of said plurality of wireless remote devices wirelessly coupled to the site controller, the first remote device being configured to determine a first communication path between the first remote device and the site controller when transmitting to the site controller, wherein the first remote device is configured for wireless communication with at least two remote devices of said plurality of the remote devices, wherein the first remote device is further configured to forward a data packet from a downstream remote device to the site controller, wherein the forwarded data packet comprises identification information of the first remote device and the downstream remote device, wherein the first remote device is further configured to maintain a connection list identifying one or more of said plurality of remote devices and a success data score representative of successful and unsuccessful transmissions to remote devices, wherein the first remote device is configured to determine the first communication path by selecting a second remote device from the connection list based at least partially on the success data score, and wherein the first remote device is configured to select a second communication path when a transmission to the second remote device is unsuccessful.

32. Upon information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus

has been willfully blind to SIPCO's patent rights.

33. Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '126 patent by inducing others to directly infringe said claims.

34. Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '126 patent by providing the Accused Products and requiring or directing end-users to use them in a manner that infringes those claims.

35. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '126 patent, including, for example, claim 1.

36. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on its website on how to use the Accused Products in an infringing manner.

37. Defendant is performing these steps, which constitute induced infringement, with the knowledge of the '126 patent and with the knowledge that the induced acts constitute infringement.

38. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '126 patent.

39. Defendant's inducement is ongoing.

40. Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '126 patent.

41. Defendant has contributed to the direct infringement of one or more claims of the ’126 patent by its personnel, contractors, and customers.

42. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’126 patent, including, for example, claim 1.

43. The special features constitute a material part of the invention of one or more of the claims of the ’126 patent and are not staple articles of commerce suitable for substantial non-infringing use.

44. Defendant’s contributory infringement is ongoing.

45. Defendant’s actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

46. Defendant’s direct infringement of one or more claims of the ’126 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of SIPCO’s rights under the patent.

47. SIPCO or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’126 patent.

48. SIPCO has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. SIPCO has and will continue to suffer this harm by virtue of Defendant’s infringement of one or more claims of the ’126 patent. Defendant’s actions have interfered with and will interfere with SIPCO’s ability to license its intellectual property and technology. The balance of hardships favors SIPCO’s ability to commercialize its own ideas and technology. The public interest in allowing SIPCO to enforce its right to exclude outweighs other

public interests, which supports injunctive relief in this case.

49. SIPCO has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to SIPCO in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,860,820**

50. SIPCO repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

51. SIPCO is the assignee and lawful owner of the entire right, title, and interest in the ’820 patent, including the sole and exclusive right to prosecute this action, enforce the ’820 patent against infringers, and collect damages for all relevant times.

52. On July 12, 2024, SIPCO, through counsel, wrote to Defendant identifying the ’820 patent and the Accused Products, noting that Defendant's prior license had lapsed, and inviting Defendant to negotiate a new license. On July 17, 2024, Defendant acknowledged the letter and stated it was evaluating the matter and would respond by August 16, 2024. It did not. On October 10, 2025, SIPCO wrote again seeking to engage on a renewed license.

53. The claims of the ’820 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the reliability and efficiency of wireless communication networks by enabling a remote device to monitor successful and unsuccessful transmissions to other remote devices, maintain a connection list with success data scores representative of those transmissions, and determine a successful wireless communication path based on those scores.

54. The written description of the ’820 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

55. Defendant has directly infringed one or more claims of the ’820 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

56. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’820 patent.

57. As just one example, the Accused Products practice each limitation of claim 1, including: a wireless communication network having a plurality of remote devices, a system comprising: a first remote device of the plurality of remote devices in wireless communication with at least a second remote device of the plurality of remote devices, the second remote device located downstream from the first remote device; wherein the first remote device is configured to monitor successful and unsuccessful transmissions to one or more of the plurality of remote devices as the first remote device communicates with the plurality of remote devices in the network and maintain a connection list identifying the plurality of wireless remote devices and a plurality of success data scores representative of the successful and unsuccessful transmissions to one or more of the plurality of remote devices, and wherein, based on the plurality of success data scores and the connection list, the first remote device is configured to determine a successful wireless communication path from the connection list through which the first remote device can make a transmission.

58. Defendant has also indirectly infringed one or more claims of the ’820 patent by inducing others to directly infringe said claims.

59. Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the ’820 patent by providing the Accused Products and requiring or directing end-users to use them in a manner that infringes those claims.

60. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '820 patent, including, for example, claim 1.

61. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on its website on how to use the Accused Products in an infringing manner.

62. Defendant performed these steps, which constitute induced infringement, with the knowledge of the ’820 patent and with the knowledge that the induced acts constitute infringement.

63. Defendant was aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the ’820 patent.

64. Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the ’820 patent.

65. Defendant has contributed to the direct infringement of one or more claims of the ’820 patent by its personnel, contractors, and customers.

66. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims

of the ’820 patent, including, for example, claim 1.

67. The special features constitute a material part of the invention of one or more of the claims of the ’820 patent and are not staple articles of commerce suitable for substantial non-infringing use.

68. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

69. Defendant's direct infringement of one or more claims of the ’820 patent has been willful, intentional, deliberate, or in conscious disregard of SIPCO's rights under the patent.

70. SIPCO or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’820 patent.

71. SIPCO has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to SIPCO in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,356,687**

72. SIPCO repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

73. SIPCO is the assignee and lawful owner of the entire right, title, and interest in the ’687 patent, including the sole and exclusive right to prosecute this action, enforce the ’687 patent against infringers, and collect damages for all relevant times.

74. On July 12, 2024, SIPCO, through counsel, wrote to Defendant identifying the ’687 patent and the Accused Products, noting that Defendant's prior license had lapsed, and inviting Defendant to negotiate a new license. On July 17, 2024, Defendant acknowledged the letter and

stated it was evaluating the matter and would respond by August 16, 2024. It did not. On October 10, 2025, SIPCO wrote again seeking to engage on a renewed license.

75. The claims of the ’687 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve the function and operation of wireless communication networks by enabling remote devices to perform a communication protocol that monitors transmission success, maintains connection lists with success data scores, selects communication paths based on those scores, addresses data packets with collision-avoidance and error-detection data, and automatically detects and registers new remote devices joining the network.

76. The written description of the ’687 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

77. Defendant has directly infringed one or more claims of the ’687 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

78. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’687 patent.

79. As just one example, the Accused Products practice each limitation of claim 1, including: a wireless communication network, a system comprising: a site controller; a plurality of remote devices wirelessly coupled to the site controller, each remote device in the plurality of remote devices enabled to perform a communication protocol to identify a communication path

when making a transmission, the communication path from the remote device to at least one of the site controller or another remote device of the plurality of remote devices, the communication protocol enabled to: monitor successful and unsuccessful transmissions from the remote device to one or more of the plurality of remote devices as the plurality of remote devices communicate with other remote devices in the network; maintain a connection list identifying one or more of the plurality of remote devices and a success data score representative of successful and unsuccessful transmissions to the one or more of the plurality of remote devices; select a communication path from the connection list through which to make a communication from the remote device to the at least one of another remote device or the site controller based on the success data score, and address a data packet between the remote device and the at least one of another remote device or the site controller, the data packet comprising identification information of the remote device and the at least one of another remote device or the site controller, the data packet further comprising a data link layer, the data link layer comprising data to assist with packet collision avoidance and error detection, wherein the plurality of remote devices are further enabled to perform an automatic network detection protocol, the automatic network detection protocol comprising listening for a signal from a new remote device in a predetermined time interval and responding to the signal to register the new remote device with the wireless communication network.

80. Defendant has also indirectly infringed one or more claims of the ’687 patent by inducing others to directly infringe said claims.

81. Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the ’687 patent by providing the Accused Products and requiring or directing end-users to use them in a manner that infringes those claims.

82. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’687 patent, including, for example, claim 1.

83. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on its website on how to use the Accused Products in an infringing manner.

84. Defendant performed these steps, which constitute induced infringement, with the knowledge of the ’687 patent and with the knowledge that the induced acts constitute infringement.

85. Defendant was aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the ’687 patent.

86. Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the ’687 patent.

87. Defendant has contributed to the direct infringement of one or more claims of the ’687 patent by its personnel, contractors, and customers.

88. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’687 patent, including, for example, claim 1.

89. The special features constitute a material part of the invention of one or more of the claims of the ’687 patent and are not staple articles of commerce suitable for substantial non-infringing use.

90. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

91. Defendant's direct infringement of one or more claims of the ’687 patent has been willful, intentional, deliberate, or in conscious disregard of SIPCO's rights under the patent.

92. SIPCO or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’687 patent.

93. SIPCO has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to SIPCO in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 11,039,371**

94. SIPCO repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

95. SIPCO is the assignee and lawful owner of the entire right, title, and interest in the ’371 patent, including the sole and exclusive right to prosecute this action, enforce the ’371 patent against infringers, and collect damages for all relevant times.

96. On July 12, 2024, SIPCO, through counsel, wrote to Defendant identifying the ’371 patent and the Accused Products, noting that Defendant's prior license had lapsed, and inviting Defendant to negotiate a new license. On July 17, 2024, Defendant acknowledged the letter and stated it was evaluating the matter and would respond by August 16, 2024. It did not. On October 10, 2025, SIPCO wrote again seeking to engage on a renewed license.

97. The claims of the ’371 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include

inventive components that improve the function and operation of remote devices in wireless networks by monitoring the successfulness of attempted data transmissions to a site controller and/or other remote devices, and selecting a wireless communication path to a downstream device based at least in part on those successfulness statuses and a connection list with success data scores.

98. The written description of the ’371 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

99. Defendant has directly infringed one or more claims of the ’371 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

100. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the ’371 patent.

101. As just one example, the Accused Products practice each limitation of claim 1, including: a first remote device comprising: a processor; and memory storing instructions that, when executed by the processor, cause the first remote device to: monitor successfulness statuses associated with each of a plurality of attempted data transmissions between (i) the first remote device and a site controller and/or (ii) the first remote device and a second remote device, each of the successfulness statuses indicating whether a corresponding attempted data transmission was successful or unsuccessful; and based at least in part on the successfulness statuses, select a wireless communication path for transmitting data between the first remote device and a selected downstream device of a plurality of downstream devices, the plurality of downstream devices

comprising the site controller and/or the second remote device, wherein the first remote device includes a connection list identifying the site controller and/or the second remote device and a success data score representative of successful and unsuccessful transmissions to the site controller and/or the second remote device.

102. Defendant has also indirectly infringed one or more claims of the ’371 patent by inducing others to directly infringe said claims.

103. Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the ’371 patent by providing the Accused Products and requiring or directing end-users to use them in a manner that infringes those claims.

104. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the ’371 patent, including, for example, claim 1.

105. Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on its website on how to use the Accused Products in an infringing manner.

106. Defendant performed these steps, which constitute induced infringement, with the knowledge of the ’371 patent and with the knowledge that the induced acts constitute infringement.

107. Defendant was aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the ’371 patent.

108. Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the ’371 patent.

109. Defendant has contributed to the direct infringement of one or more claims of the ’371 patent by its personnel, contractors, and customers.

110. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the ’371 patent, including, for example, claim 1.

111. The special features constitute a material part of the invention of one or more of the claims of the ’371 patent and are not staple articles of commerce suitable for substantial non-infringing use.

112. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

113. Defendant's direct infringement of one or more claims of the ’371 patent has been willful, intentional, deliberate, or in conscious disregard of SIPCO's rights under the patent.

114. SIPCO or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the ’371 patent.

115. SIPCO has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to SIPCO in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

116. SIPCO hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

117. SIPCO requests that the Court find in its favor and against Defendant, and that the Court grant SIPCO the following relief:

a. Judgment that one or more claims of each Asserted Patent have been infringed, directly and indirectly, literally or under the doctrine of equivalents, by Defendant;

b. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the ’126 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the Asserted Patents by such entities;

c. Judgment that Defendant account for and pay to SIPCO all damages adequate to compensate for Defendant’s infringement, in no event less than a reasonable royalty under 35 U.S.C. § 284, including supplemental damages for any infringement not presented at trial and an accounting of all infringing sales through the date of judgment or expiration of the applicable Asserted Patent, together with costs incurred by SIPCO because of Defendant’s infringing activities and other conduct complained of herein;

d. Judgment that Defendant’s infringements be found willful as to each of the Asserted Patents and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e. Pre-judgment and post-judgment interest on the damages caused by Defendant’s infringing activities and other conduct complained of herein;

f. That this Court declare this an exceptional case and award SIPCO its reasonable attorneys’ fees and costs in accordance with 35 U.S.C. § 285; and

g. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: October 15, 2026

Respectfully submitted,

By: */s/ C. Matthew Rozier*

C. Matthew Rozier (CO 46854)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Telephone: (205) 394-9632
Email: jim@rhmtrial.com

**Attorneys for *Plaintiff SIPCO LLC***

*Admitted to the Eastern District of Texas